STATE OF NEBRASKA, APPELLEE, V. ANTHONY EUGENE
MAEZ, APPELLANT.

281 N. W. 2d 531

Filed July 17, 1979. No. 42438.

Bert E. Blackwell, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendant Maez was prosecuted in the District Court for Red Willow County, Nebraska, on two counts of violation of the provisions of section 28-743, R. R. S. 1943, which provides in part: "Whoever, being an inmate of any jail or correctional or penal institution, shall assault, threaten, imprison, or detain any person for the purpose of compelling or inducing the performance of any act by such person,

or by any other person, shall be guilty of a felony
. . . ." A jury trial was waived and the defendant
was found guilty by the court on both counts and sen-
tenced to two concurrent terms of 11 years each in
the Nebraska Penal and Correctional Complex. He
has appealed to this court and assigns and argues
the following errors: (1) The trial court erred in
not dismissing the charge because the statute is
vague and uncertain and as a result is unconstitu-
tional because it violates the due process and equal
protection clauses of Article XIV, section 1, of the
Constitution of the United States, and the due proc-
ess clause of Article I, section 3, of the Constitution
of Nebraska. (2) The proof of the commission of
the specific acts, i.e., compelling the commission of
a sexual offense by threat, is insufficient to support
the conviction because of lack of corroboration of
the testimony of the victim. (3) The evidence is in-
sufficient to permit a finding of guilt beyond a rea-
sonable doubt. We affirm.

In order to understand the import of the defend-
ant's constitutional arguments, it is necessary to
summarize the general nature of the facts which are
relied upon to support the conviction. On the 18th
and 19th days of January 1978, the defendant Maez
and the victim, along with certain other males, were
inmates of the Red Willow county jail. On those 2
days, the evidence, if believed by the court, would
show that, by means of threats of physical harm, de-
fendant compelled the victim to perform upon the
defendant an act of sodomy per os and to submit to
an act of sodomy per anum. The evidence also indi-
cates that the victim was compelled to perform the
same acts with another inmate, one Crabtree, who
was one of the defense witnesses.

The equal protection argument is founded upon
the fact that the statute applies only to inmates of
penal institutions. The vagueness argument is es-
sentially that the statute fails to define the nature of

the threats prohibited and to describe the nature of the acts, the inducement or compulsion of which are prohibited. It is argued, therefore, the statute may prohibit even lawful "threats," or prohibit the compulsion of lawful acts such as expressions of a purpose to sue prison officials if they do not perform acts which the law requires them to perform for the benefit of inmates. A second aspect of the argument is that the statute is so broad all sorts of acts made unlawful by other statutes might be prosecuted under it, e.g., as illustrated by this case, sodomy accomplished by force or threat. The defendant supports this argument with a long list of hypothetical illustrations, some of which are clearly possible, others of which are not. The defendant also argues the operation of the statute should be confined to so-called "hostage" situations.

In considering these arguments it is necessary to analyze the statute. The crime defined contains three elements: (1) It can be committed only by one who is an inmate of a penal institution; (2) the inmate must either assault, threaten, imprison, or detain some person; and (3) it must be done for the purpose of compelling or inducing that person or some other person to perform "any act."

The argument, that the statute violates the defendant's right to equal protection because it applies only to that class of persons who are inmates of penal institutions, has been considered and rejected by this court in the case of State v. Eckstein, 188 Neb. 146, 195 N. W. 2d 194, where we said: "The dangers to society, custodians, and prisoners which are inherent in administration and control of penal institutions are by now well known to everyone. The legislative classification here was not arbitrary or unreasonable. 'A State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment.' Skinner v. Oklahoma, 316 U. S.

535, 62 S. Ct. 1110, 86 L. Ed. 1655." A statute is not constitutionally deficient merely because it applies only to inmates. We need not further discuss that point.

The remaining constitutional arguments are intertwined and we will discuss them together. It seems apparent from the language of the statute that the legislative purposes of section 28-743, R. R. S. 1943, are the maintenance and enforcement of good order as well as the protection of the safety of persons, including inmates and institutional personnel, in penal institutions. The language of the statute is necessarily broad, as otherwise its objectives could not be accomplished. Is it so broad it would make harmless or essentially lawful acts unlawful, or is it so vague the courts and others cannot determine what acts are prohibited?

At this point let us consider the elements of the offense as defined by the statute. Certain acts included in the second element, to wit, "assault, . . . imprison," are themselves unlawful acts and, of course, cannot be lawfully used by an inmate to accomplish any purpose whatever. Conversely, of course, force or restraint used in self-defense would not come within the definition of those two terms. The term "detain" ought to be interpreted, not in the sense of mere delay, but in the sense of a restraint of lawful freedom to move, imposed either physically or by threat. This meaning harmonizes with the other terms used. The term "threaten" does not, in and of itself, necessarily import an unlawful act and must therefore be restricted in its meaning in the light of the objective or purpose sought to be accomplished by the threats. If one "threatens" to sue in order to enforce one's lawful or presumed lawful rights, nothing illegal is done; however, a mere expression of an intention to enforce one's legal rights in a peaceable and lawful manner is not the type of threat which the statute was enacted to restrict.

Is the prohibition against compelling "any act" too broad? In State v. Saltzman, 194 Neb. 525, 233 N. W. 2d 914, this court had to consider the phrase, "for the purpose of compelling the performance of any act," by the victim or any other person, contained in the kidnapping statute. § 28-417, R. R. S. 1943. We there approved as constitutional, "a broad and comprehensive application of the term 'any act.' "

In Saltzman, the means of compulsion used was the pointing of a gun. The act compelled was the disclosure by a law enforcement officer of the place of residence of the prosecutor. In that case it would, of course, have been lawful for the defendant to ask for the information. The Legislature could, however, prohibit the compulsion of any disclosure by the use of coercive methods. An analogous situation is covered by the statute which we have for consideration in this case, in that even a lawful end may not be compelled by the coercive means described in the statute. See, also, People v. Agnello, 259 Cal. App. 2d 785, 66 Cal. Rptr. 571, where, under a statute providing that if it reasonably appeared to an officer of a state campus or facility that a person not a student or employee was committing "any act" likely to interfere with the conduct of the activities of the campus, such person could be directed to leave and was guilty of a misdemeanor upon failure to leave, the court held the words "any act" were not unconstitutionally vague.

In Saltzman, we said: "It is a fundamental rule of statutory construction that, if possible, a court will try to avoid a construction which leads to absurd, unjust, or unconscionable results. A sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent." Accordingly, we hold that section 28-743, R. R. S. 1943, embraces only those situations where either the means used to com-

pel or induce performance of an act or where the end to be accomplished by such means, the performance of the act itself, are of a nature which the Legislature may prohibit under a reasonable exercise of the police power. As so construed and limited, the statute is constitutional.

As applied to the facts before us, the acts clearly were within the terms of the statute under a reasonable construction thereof and the language of the statute is sufficiently definite to give any reasonable person notice that the acts in question were prohibited. In Saltzman we said: "The statute here is sufficiently clear that a person of ordinary intelligence has fair notice of exactly what is forbidden. The actions of the defendant were clearly prohibited under any reasonable construction of the statute. Although hypothetical factual situations might be imagined where the application of the statute might raise constitutional issues, such imaginary factual situations do not help the defendant, nor make the statute unconstitutional."

The next facet of the plaintiff's argument is essentially that sodomy committed by force or threat is made a crime by another statute and so it must be prosecuted under that statute. Defendant makes a hypothetical list of numerous other crimes which might be prosecuted under section 28-743, R. R. S. 1943, as well as under a statute which defines those crimes. No doubt the defendant could have been prosecuted under the sodomy statute. However, he cites no authority whatever which holds that making such a statutory alternative available to the prosecutor renders the statute unconstitutional. As we see it, this argument is another version of the equal protection argument and is answered by our holding in State v. Eckstein, 188 Neb. 146, 195 N. W. 2d 194.

The defendant's second contention is that, since the crime in question is under the facts a sexual assault, the testimony of the victim must be corrobo-

rated. Assuming arguendo that corroboration is required, an examination of the record indicates corroboration was clearly sufficient. The pertinent rules, as stated in State v. Narcisse, 187 Neb. 209, 188 N. W. 2d 715, a case involving prosecution for sodomy, are: "Testimony of the alleged victim in a criminal prosecution for sodomy with a human being is insufficient for conviction unless it is corroborated in accordance with rules pertaining to other sexual offenses." Corroboration is generally sufficient under those rules if there are material facts tending to support the testimony of the victim as to the principal fact. The evidence here shows the victim, the defendant, and several others were in an area of the jail where there was open access between two cell blocks and the recreation area. One of the prisoners testified he had been threatened by defendant, for no apparent reason, with a plunger handle. Defendant held the plunger in one hand, pounded it on the other hand, and looked at the witness in a menacing manner for a considerable length of time. Later the defendant asked the witness to perform sexual acts with him. The witness refused, despite the fact the defendant threatened to beat him up if he did not submit. This same witness also testified the defendant and the inmate Crabtree, who was prosecuted for similar offenses with the victim, made remarks about the attractiveness of the "victim's butt," and expressed a desire to have sexual intercourse with him. There was also evidence showing opportunity for the commission of the offense, that is, that defendant and the victim were in the bunk area of the jail at a time when the others were watching TV in the adjoining recreation room.

The contention the evidence is insufficient to support the charge is not well grounded. It is unnecessary to recite the repulsive details of the unnatural acts in question. Suffice it to say the evidence supports the conclusion that the victim submitted

and acted through fear of physical violence. Both the defendant and Crabtree testified. Their testimony was that they took no part in such acts and would not. They said sodomy did occur between the victim and another prisoner who, at the time of trial, was not available as a witness. The stories of Crabtree and the defendant dovetailed very closely. However, the trial judge heard and saw these two witnesses and apparently regarded their versions as a fabrication and accepted the evidence of the State.

AFFIRMED.