STATE OF NEBRASKA, APPELLEE, V. TIMOTHY J. KINCAID, APPELLANT.
453 N.W.2d 738

Filed April 13, 1990.    No. 89-730.

Timothy J. Kincaid, pro se.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the Douglas County District Court affirming defendant's conviction and sentence for speeding. We affirm the conviction, but reduce the fine to $50.

On October 2, 1988, at approximately 3:35 p.m., Omaha Police Division Officer Brian Haskell was positioned at 110th and West Dodge Road in Omaha, conducting stationary radar checks from his marked police cruiser. He was observing traffic eastbound on Dodge when his radar sounded. Haskell observed a red Mercedes-Benz traveling at high speed in the center lane of West Dodge Road, pursued the Mercedes, and stopped it at approximately 96th and West Dodge Road. Defendant was cited for traveling 75 m.p.h. in a 45-m.p.h. zone.

Defendant pled not guilty, and the case was tried to the court without a jury. Evidence of the car's speed, as measured by the radar unit, was admitted over defendant's objection. At the close of defendant's case, the trial court found defendant guilty, fined him $100, and ordered him to pay costs. He has appealed to this court, assigning several errors.

Defendant first contends, in sum, that the trial court erred in admitting into evidence the radar readout, when the foundational evidence was inadequate to establish that the radar unit was functioning properly and adequately, as required by Neb. Rev. Stat. § 39-664(1) (Reissue 1988).

Section 39-664(1) provides in pertinent part:

Before the state may offer in evidence the results of such radio microwave or other electronic speed measurement for the purpose of establishing the speed of any motor vehicle, the state shall prove the following:

(a) The measuring device was in proper working order at the time of conducting the measurement;

. . . .

(d) The operator conducted external tests of accuracy upon the measuring device, within a reasonable time both prior to and subsequent to an arrest being made, and the measuring device was found to be in proper working order.

In *State v. Kudlacek,* 229 Neb. 297, 298, 426 N.W.2d 289,

291 (1988), we stated that

> "[e]vidence of the readings of radar equipment designed to determine the speed of moving vehicles is admissible as evidence of speed if a sufficient foundation is laid as to the accuracy of the equipment in operation." . . . "Reasonable proof that the particular radar equipment employed on a specific occasion was accurate and functioning properly is all that is required."

In *Kudlacek*, the State presented evidence showing that a light test, an internal calibration test, and a tuning fork test were used to test the accuracy of the radar unit. We held this evidence was sufficient for the trial judge to conclude the radar unit was functioning properly.

In *State v. Snyder*, 184 Neb. 465, 168 N.W.2d 530 (1969), the defendant's speed was measured by a radar unit which was tested several hours earlier using a calibrated tuning fork and a speedometer check with another patrol car. The defendant argued on appeal to this court that in the absence of proof that the patrol car's speedometer was accurate and proof that the calibrated tuning fork was also accurate, there was insufficient proof that the radar equipment was accurate and working properly. We stated that "[i]n effect, the defendant's argument is that any comparative testing devices used to determine whether the particular radar equipment was accurate and functioning properly must themselves be proved accurate and functioning properly. We cannot agree. Such a chain of evidence might have to proceed ad infinitum." *Id.* at 466, 168 N.W.2d at 531. We held that evidence of either test was sufficient to constitute adequate proof that the radar equipment was working properly.

> Evidence that radar equipment was tested within a few hours of its use, by means of a calibrated tuning fork, or by a comparison with the speedometer of a motor vehicle driven through the radar field, and was functioning properly, is sufficient evidence of the accuracy of the radar equipment.

*Id.* at 467, 168 N.W.2d at 532.

In the present case, Officer Haskell testified that prior to using the radar unit he performed an LED light segment test, an

internal circuitry test, and a tuning fork test, and concluded the radar was operating properly. He further testified that after issuing the citation, but prior to leaving the location, he performed the same tests and again concluded the radar unit was functioning properly. With regard to the tuning fork test, Haskell testified there were two forks, one stamped with a 35-m.p.h. marking and the other an 80-m.p.h. marking. The tuning forks were supplied by the manufacturer and were tested at the factory. He testified he struck each tuning fork, held it approximately 1 inch in front of the radar antenna, and received a digital readout which correlated to the marking stamped on the fork. The radar unit was not calibrated using a test car. We conclude that this evidence, in light of *Kudlacek* and *Snyder*, was sufficient foundation to establish that the radar unit was operating properly.

Defendant next assigns as error the trial court's failure to dismiss the case when the State failed to prove that the arresting officer met the requirements of § 39-664(2) in apprehending him. This section provides:

> The driver of any motor vehicle measured by use of radio microwaves or other electronic device to be driving in excess of the applicable speed limit may be apprehended:
>
> (a) If the apprehending officer has observed the recording of the speed of the motor vehicle by the radio microwaves or other electronic device;
>
> (b) If such apprehending officer has received a radio message from an officer who observed the speed recorded and the radio message (i) has been dispatched immediately after the speed of the motor vehicle was recorded, and (ii) gives a description of the vehicle and its recorded speed; and
>
> (c) If the apprehending officer is in uniform or displays his or her badge of authority.

Defendant contends that because the conjunctive word "and" separates subparts (b) and (c), all three subparts are required before a speeder can be validly apprehended. In the present case, then, he could not have been validly apprehended because the arrest was effectuated by only one officer, where the statute requires at least two officers acting in accordance

with the statute for a valid arrest.

We reject appellant's contention. This court has often stated that while a penal statute is to be construed strictly, it is to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. See, *In re Interest of Richter,* 226 Neb. 874, 415 N.W.2d 476 (1987); *State v. Burke,* 225 Neb. 625, 408 N.W.2d 239 (1987); *State v. Hicks,* 225 Neb. 322, 404 N.W.2d 923 (1987); *State v. Lynch,* 223 Neb. 849, 394 N.W.2d 651 (1986); *State v. Ewing,* 221 Neb. 462, 378 N.W.2d 158 (1985); *State v. Farr,* 209 Neb. 163, 306 N.W.2d 854 (1981). Although a penal statute is required to be strictly construed, such statute should be given a sensible construction with its general terms limited in construction and application to prevent injustice, oppression, or an absurd consequence. *Wounded Shield v. Gunter,* 225 Neb. 327, 405 N.W.2d 9 (1987); *State v. Valencia,* 205 Neb. 719, 290 N.W.2d 181 (1980); *State v. Robinson,* 202 Neb. 210, 274 N.W.2d 553 (1979). This court has also stated in numerous criminal cases that in construing a statute this court will, if possible, try to avoid a construction which leads to absurd, unjust, or unconscionable results, *State v. Beerbohm,* 229 Neb. 439, 427 N.W.2d 75 (1988); *State v. Bargen,* 219 Neb. 416, 363 N.W.2d 393 (1985); *State v. Farr, supra;* and *State v. Maez,* 204 Neb. 129, 281 N.W.2d 531 (1979), and that a sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. *State v. Farr, supra; State v. Maez, supra.*

In the present case, interpreting § 39-664(2) to require two officers who are using radar to act jointly when issuing a citation for speeding is absurd. Under this interpretation of the statute, a single officer, who determined by speed radar that a vehicle was traveling in excess of the speed limit, could not validly issue a speeding citation to the driver of that vehicle, but that same officer, who had probable cause and who was acting alone, could validly arrest a suspect on the most serious felony offenses. This interpretation does not effectuate the object of the legislation, and the result of such an interpretation is absurd, especially since the scientific principles underlying

speed radar devices are widely recognized and accepted in the legal community.

We believe a more reasonable construction of § 39-664(2) would require showing subparts (a) and (c), or showing subparts (b) and (c). Therefore, the statute should be construed as reading:

The driver of any motor vehicle measured by use of radio microwaves or other electronic device to be driving in excess of the applicable speed limit may be apprehended:

(a) If the apprehending officer, who is in uniform or displays his or her badge of authority, has observed the recording of the speed of the motor vehicle by the radio microwaves or other electronic device; *OR*

(b) If the apprehending officer, who is in uniform or displays his or her badge of authority, has received a radio message from an officer who observed the speed recorded and the radio message (i) has been dispatched immediately after the speed of the motor vehicle was recorded, and (ii) gives a description of the vehicle and its recorded speed.

We believe that this construction, allowing officers using speed radar to act alone or in groups of two or more, best achieves the purpose of the statute. Defendant's contention is without merit.

Defendant next argues that the State failed to establish that the speed limit on West Dodge Road was 45 m.p.h. We agree. The complaint filed against defendant in the county court alleged a violation of Neb. Rev. Stat. § 39-662(2) (Reissue 1988), in that defendant was driving 75 m.p.h. in a 45-m.p.h. zone. That section delineates the maximum speeds for particular types of roads.

The prosecution implicitly assumes that since Neb. Rev. Stat. § 39-663(4) (Reissue 1988) authorizes a municipality to lower the maximum speed set forth in § 39-662(2), a violation of the lower maximum speed is also a violation of § 39-662(2), and thus an offense against the State of Nebraska. We neither reject nor accept this assumption. The prosecution offered no evidence of a municipal ordinance reflecting that the speed limit on West Dodge Road was 45 m.p.h. The speed limit for the area in question is 55 m.p.h. under § 39-662(2)(d). The speed of

defendant's car was established by competent evidence to be 75 m.p.h. Pursuant to the Waiver/Fine Schedule for Nebraska County Courts (Dec. 1, 1989), defendant's $100 fine is therefore modified to $50 to reflect a 20-m.p.h. speed difference.

We have examined defendant's remaining assignment of error, and it is wholly without merit. Accordingly, defendant's conviction and sentence are affirmed as modified.

AFFIRMED AS MODIFIED.