STATE OF NEBRASKA, APPELLEE, V.
DAMON L. CARMAN, APPELLANT.
631 N.W.2d 531

Filed July 17, 2001. No. A-00-940.

Patrick J. Boylan, of Hascall, Jungers, Garvey & Delaney, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HANNON, INBODY, and MOORE, Judges.

INBODY, Judge.

## INTRODUCTION

Damon L. Carman appeals from the Sarpy County District Court's order affirming his convictions for operating a motor vehicle to avoid arrest and speeding.

## STATEMENT OF FACTS

On October 28, 1999, a complaint was filed in Sarpy County District Court charging Carman with willful reckless driving (count I), operating a motor vehicle to avoid misdemeanor arrest (count II), and speeding (count III). A trial to the court was held on May 8, 2000.

Police officer John Danderand testified that at approximately midnight on October 16, 1999, he was traveling eastbound on Giles Road in Sarpy County, Nebraska, when he observed a Ford pickup traveling westbound on Giles Road. Danderand clocked the vehicle traveling 57 m.p.h., which was in excess of the posted 45-m.p.h. speed limit, using a "B-36 Radar Doppler System." Additionally, as the pickup passed, Danderand observed that the pickup had no taillights. Danderand proceeded eastbound for 3 or 4 seconds until the next break in the median where he turned around so that he was also traveling westbound. He began accelerating in order to catch up with the pickup. At this point, Danderand "had a feeling that it was possible that [the person driving the pickup] was trying to get away from me so . . . I hit the record button to the cruiser's in-car camera." Danderand observed the pickup making a left-hand turn onto Cornhusker Road, and Danderand followed. Danderand lost sight of the pickup until he observed its brake lights.

Danderand activated the cruiser's flashing overhead lights "just prior to the stop." Danderand's cruiser's siren was not activated at any point during the stop. Danderand approached the pickup, and the driver identified himself as Carman. A videotape of a portion of the stop was received into evidence as exhibit 1. The relevant portion of Danderand and Carman's discussion is as follows:

Danderand: Do you know why I stopped you tonight?

Carman: Ahhh, tail light.

Danderand: Well, do you know how fast you were going back on Giles Road?

Carman: No, sir.

Danderand: I clocked you at 57. It's a 45 zone through there. So both of those are the reasons I stopped you. Do you work here or . . . .

Carman: No.

Danderand: Where are you going?

Carman: Ahhhh, I knew, I knew my tail lights were out.

Danderand: So you were trying to ditch me weren't you? 'Cause you were moving on Cornhusker. Is that the truth sir?

Carman: Yes, sir.

Danderand testified that he was trained and certified to test and operate the B-36 radar system, that he tested the unit at the beginning of his shift and after the traffic stop, and that it was functioning properly. Danderand testified as to the procedure he used to test the radar unit:

I began by hitting the light switch. When you hit the light switch, the numbers 188 will show up in the windows of the radar unit. Then I hit the ICT button which will show 32 in both the control window and the target window of the unit. And then using tuning forks, which are each set to a certain speed, I will check the stationary speed for each of those. One should be 65 miles per hour. One should be 35 miles per hour. And then that's for a stationary target. And then you flip the switch to moving radar. And when you use both tuning forks, there should be a speed of 30 and 35 in the windows.

On cross-examination, Danderand admitted that he never tested the tuning forks for accuracy and that he just assumes the tuning forks are accurate when conducting the accuracy tests on the radar unit.

Carman testified that he has complete loss of hearing in his right ear and more than a 55-percent loss of hearing in his left ear, that he did not understand what Danderand was saying when Danderand asked him about trying to ditch him, and that he was "just trying to be cooperative."

The county court found Carman guilty of counts II and III, operating a motor vehicle to avoid misdemeanor arrest and speeding, but found him not guilty of count I, willful reckless driving. Carman was sentenced to 12 months' probation, a $100 fine on count II and a $75 fine on count III, and 30 hours of community service. Carman appealed his convictions to the Sarpy County District Court, arguing that the State failed to prove an essential element of the flight to avoid arrest charge and that the State failed to present sufficient foundation for the admissibility of radar evidence. A hearing was held before the district court on August 4, 2000. On August 10, the Sarpy County District Court filed an order affirming Carman's convictions. Carman has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Carman contends that the district court erred in affirming the county court's finding of guilt for flight to avoid arrest and for speeding.

## STANDARD OF REVIEW

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001); *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999); *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998); *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998).

## DISCUSSION

*Flight to Avoid Arrest.*

Carman's first assigned error is that the district court erred in affirming the county court's finding of guilt for operating a motor vehicle to avoid arrest because the State failed to prove an essential element of that offense, i.e., that the arresting officer made an attempt to arrest.

Neb. Rev. Stat. § 28-905 (Reissue 1995) provides in part:

Any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation for the violation of any law of the State of Nebraska constituting a misdemeanor, infraction, traffic infraction, or any city or village ordinance, except nonmoving traffic violations, commits the offense of misdemeanor operation of a motor vehicle to avoid arrest.

■ In *State v. Clifford*, 204 Neb. 41, 46, 281 N.W.2d 223, 226 (1979), the defendant was charged with operating a motor vehicle to avoid arrest under Neb. Rev. Stat. § 60-430.07, "R. S. Supp., 1978," which provided: " 'It shall be unlawful for any person operating any motor vehicle to flee in such vehicle in an effort to avoid arrest for violating any law of this state. . . .' " The Nebraska Supreme Court held that an attempt to arrest is an essential

element of the offense of fleeing in a motor vehicle to avoid arrest, but proof that the defendant actually committed the law violation for which the arrest was attempted is not required. *Id.*

Although this holding was made under consideration of a prior version of the operation of a motor vehicle to avoid arrest statute, the wording of the statutes is similar, and the holding is likewise applicable to the current version codified at § 28-905. The question in the instant case then becomes whether the State failed to prove an essential element of that offense, i.e., that the arresting officer made an attempt to arrest.

The evidence adduced at trial, when viewed in the light most favorable to the State, is that after clocking Carman's pickup proceeding westbound on Giles Road traveling at a rate of 57 m.p.h. in a 45-m.p.h. zone, Danderand, who was traveling eastbound, proceeded for 3 or 4 seconds until the next break in the median, where he turned his cruiser around and began accelerating in order to catch up with the pickup. Danderand observed the pickup making a left-hand turn onto Cornhusker Road, and Danderand followed. Danderand lost sight of the pickup until he observed its brake lights. Danderand activated the cruiser's flashing overhead lights "just prior to the stop." Danderand's cruiser's siren was not activated at any point during the stop. Thus, when Danderand was following Carman, there was no attempt to arrest, and once Danderand activated his cruiser's flashing overhead lights, Carman stopped his vehicle.

Consequently, the State failed to prove that Danderand made an attempt to arrest, which is an essential element of the offense of operation of motor vehicle to avoid arrest. Consequently, there is insufficient evidence to support this conviction, and the district court erred in affirming the conviction.

*Speeding.*

Carman's second assigned error is that the district court erred in affirming the county court's finding of guilty for the speeding charge because the county court erred in receiving radar equipment evidence of his pickup's speed at trial. More specifically, Carman claims insufficient foundation was set for admission of the radar evidence because Danderand testified that he did not test the tuning forks to establish their accuracy.

■ Before evidence of a motor vehicle's speed determined by use of radar equipment is admissible, the State, as required by Neb. Rev. Stat. § 60-6,192(1) (Reissue 1998), must establish the equipment's accuracy when the determination of speed was made. See, *State v. Lomack*, 239 Neb. 368, 476 N.W.2d 237 (1991); *State v. Kudlacek*, 229 Neb. 297, 426 N.W.2d 289 (1988). Section 60-6,192 specifies the requirements for admissibility of evidence from a radar device:

(1) Determinations made regarding the speed of any motor vehicle based upon the visual observation of any peace officer, while being competent evidence for all other purposes, shall be corroborated by the use of a radio microwave, mechanical, or electronic speed measurement device. The results of such radio microwave, mechanical, or electronic speed measurement device may be accepted as competent evidence of the speed of such motor vehicle in any court or legal proceeding when the speed of the vehicle is at issue. Before the state may offer in evidence the results of such radio microwave, mechanical, or electronic speed measurement device for the purpose of establishing the speed of any motor vehicle, the state shall prove the following:

(a) The radio microwave, mechanical, or electronic speed measurement device was in proper working order at the time of conducting the measurement;

(b) The radio microwave, mechanical, or electronic speed measurement device was being operated in such a manner and under such conditions so as to allow a minimum possibility of distortion or outside interference;

(c) The person operating the radio microwave, mechanical, or electronic speed measurement device and interpreting such measurement was qualified by training and experience to properly test and operate the radio microwave, mechanical, or electronic speed measurement device; and

(d) The operator conducted external tests of accuracy upon the radio microwave, mechanical, or electronic speed measurement device, within a reasonable time both prior to and subsequent to an arrest being made, and the device was found to be in proper working order.

 A tuning fork test on a motor vehicle speed measurement device may be sufficient to satisfy the "external tests" requirement of § 60-6,192(1). In *State v. Kincaid*, 235 Neb. 89, 453 N.W.2d 738 (1990), the Nebraska Supreme Court upheld a speeding conviction based on radar evidence, when the arresting officer in *Kincaid* had tested the accuracy of his radar unit by using two tuning forks which had been "supplied by the manufacturer and were tested at the factory." *Id.* at 92, 453 N.W.2d at 740. Further, in *Kincaid*, the court recognized that a properly conducted tuning fork test was one of two valid methods for demonstrating a radar unit's accuracy at measuring a motor vehicle's speed and, therefore, the unit's reliability as a source of evidence.

> "Evidence that radar equipment was tested within a few hours of its use, by means of a calibrated tuning fork, or by a comparison with the speedometer of a motor vehicle driven through the radar field, and was functioning properly, is sufficient evidence of the accuracy of the radar equipment."

*Id.* at 91, 453 N.W.2d at 740 (quoting *State v. Snyder*, 184 Neb. 465, 168 N.W.2d 530 (1969)). *Kincaid*, however, specifically requires that the tuning fork used to test a radar unit for measuring a motor vehicle's speed must be calibrated, that is, verified or authenticated as a proper instrument for the test. Similarly, in *Kudlacek, supra*, the court found sufficient foundation for radar evidence where the arresting officer used two tuning forks which had been "certified" at 80 and 35 m.p.h., respectively.

However, in *Lomack, supra*, the arresting officer testified that he used an unidentified tuning fork to test the radar unit which supplied information about the speed of the defendant's automobile and stated that the unit displayed the number "35" when the vibrating tuning fork, "inscribed" with a "35" was held in front of the machine. The Nebraska Supreme Court held that there was insufficient foundation for the admission of radar evidence because, inter alia, there was no evidence that the tuning fork was in any way properly tested, calibrated, or certified as a reliable gauge of a radar unit's accuracy.

In the instant case, Danderand testified that he tested the radar unit using tuning forks checking for stationary speeds, which should be 35 and 65 m.p.h. He then checked the moving radar

which he testified should show a speed of 30 and 35 m.p.h. in the window. However, Danderand admitted that he never tested the tuning forks for accuracy and that he just assumes the tuning forks are accurate when conducting the accuracy tests on the radar unit. Additionally, there was no evidence that the tuning forks used by Danderand had been supplied by the manufacturer and were tested at the factory. Thus, there was no evidence produced that the tuning forks used by Danderand to test his radar were in any way properly tested, calibrated, or certified as a reliable gauge of a radar unit's accuracy. Because the State failed to satisfy the requirements for admissibility under § 60-6,192(1), Danderand's testimony concerning radar-determined speed of Carman's pickup was erroneously admitted and should not have been considered in Carman's trial. Since inadmissible evidence of radar-determined evidence was the evidence on which Carman's speeding conviction is based, we set aside Carman's conviction and remand this cause to the district court with direction to reverse the county court's judgment concerning Carman's conviction and order a new trial for Carman in the county court.

## CONCLUSION

Because the State failed to prove that Danderand made an attempt to arrest, which is an essential element of the offense of operation of motor vehicle to avoid arrest, the district court's order affirming this conviction is reversed and the cause is remanded to the district court with direction to reverse the county court's judgment concerning Carman's operation of a motor vehicle to avoid arrest conviction and to vacate his conviction on that count.

With regard to Carman's speeding conviction, because the State failed to satisfy the requirements for admissibility under § 60-6,192(1) and the testimony concerning radar-determined speed of Carman's pickup was erroneously admitted into evidence and should not been considered in Carman's trial, we set aside Carman's conviction for speeding and remand this cause to the district court with direction to reverse the county court's judgment concerning Carman's speeding conviction and order a new trial on the speeding charge for Carman in the county court.

REVERSED AND REMANDED WITH DIRECTIONS.