IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. ATKINSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
NATHANIEL D. ATKINSON, APPELLANT.

Filed July 2, 2013.    No. A-12-693.

Appeal from the District Court for Lancaster County: KAREN B. FLOWERS, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Nathaniel D. Atkinson appeals from his convictions in the district court for Lancaster County for burglary and flight to avoid arrest. He challenges the court's decision to overrule his motion for a directed verdict and the sufficiency of the evidence to support his convictions. He also asserts that the court imposed excessive sentences. Because we find the evidence sufficient to support the convictions and no abuse of discretion in the sentences imposed, we affirm.

## BACKGROUND

On January 26, 2012, the State filed an information in the district court, charging Atkinson with burglary in violation of Neb. Rev. Stat. § 28-507 (Reissue 2008), a Class III felony, and operating a motor vehicle to avoid arrest in violation of Neb. Rev. Stat. § 28-905(2) (Reissue 2008), a Class I misdemeanor. A jury trial was held on May 7 and 8.

James Srb was at home in the Highlands area of Lincoln, Nebraska, on the evening of October 5, 2011, when he saw a car he did not recognize parked in front of his house. About 20

- 1 -

minutes later, he saw the same car in a different location than it had been earlier. This time, the car was parked by a walking path, which runs behind the residence that was burglarized. When Srb went outside about 15 minutes later, he observed the car parked in a third location. Srb decided to call the police about the vehicle. He was concerned because he did not recognize the vehicle and there had been recent mailbox vandalisms in the area. The police arrived about 10 minutes later, and Srb spoke briefly with an officer about his observations.

Judy Rung, who lived on the same street as Srb, returned home about 9 p.m. on October 5, 2011, and could not get into her garage. Rung went to the back of her residence, where she discovered that the glass patio door had been broken. When Rung's husband arrived home, they entered the house, saw that it had been burglarized, and called the police. The Rungs discovered that items were missing from their home, including an unknown amount of jewelry, a big-screen television, a portable heater, a laptop computer issued to Rung's husband by Lincoln Public Schools (LPS) where he works, and some expensive perfume.

Officer Tu Tran of the Lincoln Police Department was dispatched to investigate Srb's complaint of a suspicious vehicle in the Highlands area and was later joined by Officer Matthew Fisher. Tran met with Srb, who told Tran that his son had seen three people exit the car and run through some yards toward the park area. Tran patrolled the neighborhood for a few minutes, but he did not find anyone running through the area or any suspicious activity. Tran returned to the location of the parked car near Srb's house and looked inside the car. Tran saw a television in the back seat and a laptop computer with an LPS sticker on it in the front seat. Tran was able to see identifying numbers on both items, which he wrote down. In the back seat of the car, Tran also observed what he thought was a large speaker, which he described at trial as a large wooden box. Tran ran the license plate of the car, which was a dark green 1995 Ford Taurus, and learned that it was registered to Atkinson.

Upon Fisher's arrival at the scene, Tran left to retrieve an unmarked car from the police station, so that upon his return he could observe the car and contact the three unidentified people if they came back to the car. Very shortly thereafter, as Fisher was patrolling the area, he saw an individual that matched Atkinson's photograph from Tran's license check "skipping down" the sidewalk. By the time Fisher returned to the spot where Atkinson's car had been parked, it was gone. Fisher drove around and eventually located Atkinson's car. Fisher turned on his cruiser's overhead lights, and the car pulled over. When the car pulled over, Fisher shone a spotlight into the car, and he was able to identify the driver as Atkinson. Before Fisher could exit his vehicle, Atkinson suddenly drove away.

Fisher turned on his cruiser's lights and siren and pursued Atkinson. Part of the pursuit was through residential areas, at speeds of around 35 or 40 m.p.h., with Atkinson running several stop signs. At some point, Tran joined the pursuit. After a few minutes, the officers were ordered to end the pursuit, and they returned to the station without finding Atkinson.

Fisher was questioned at trial about his reason for stopping Atkinson's vehicle. Fisher testified that he initially stopped the car driven by Atkinson because of the suspicious circumstances surrounding the car, particularly in light of the items that Tran saw inside the car, and because Fisher wanted to investigate the car further and talk to Atkinson.

Officer Justin Darling testified that he and a police investigator heard the pursuit on the radio, so they went to an address known to be associated with Atkinson to try and locate him.

They contacted Atkinson's mother at this address and told her they were looking for Atkinson. She eventually provided them with Atkinson's cellular telephone number. Darling called the cellular telephone and talked to Atkinson for about 12 minutes. During the conversation, Atkinson asked questions about fleeing to avoid arrest, and Darling explained there were two different types, fleeing in a reckless manner and fleeing not in a reckless manner. Atkinson told Darling that he had gone to work, left early, and was pulled over as he left work. Atkinson stated that he should not have run, but that when he got pulled over, he just took off. Atkinson informed Darling that he took off because he did not want to be taken into custody. Atkinson commented that the police officer never got out of the cruiser, and he questioned why he was pulled over because he was traveling only 15 m.p.h. Darling did not initiate any conversation with Atkinson about the burglary, but Atkinson did ask Darling about a computer that Darling and the investigator had mentioned to Atkinson's mother. Darling told Atkinson that the officer who initiated the traffic stop could discuss the computer more with Atkinson since he knew more about it than Darling did. Darling testified that he was actually unaware of a burglary having been reported until well after he had spoken to Atkinson.

After returning to the police station, Tran and Fisher were dispatched to a reported burglary about a block away from where Tran had first seen Atkinson's car. When the officers arrived at the location of the burglary, which was the Rung residence, Rung reported that a television, a laptop with LPS markings, and a portable heater had been stolen. Rung provided Tran with the serial number from the television, which was the same number he had observed earlier on the television in the green Taurus. The identifying numbers for the laptop were provided the following day, and those numbers also matched the numbers in Tran's field notes. The missing items were never recovered.

After the State rested its case, Atkinson moved for a directed verdict on both the burglary and flight to avoid arrest charges. The district court ultimately overruled the motion. Atkinson did not adduce any evidence.

The jury found Atkinson guilty of both counts charged in the information. On July 10, 2012, the district court entered an order, sentencing Atkinson to imprisonment for 4 to 8 years for the burglary conviction and to a consecutive term of 1 year for the flight to avoid arrest conviction. The court also ordered that the sentences in this case run consecutively to the sentence Atkinson was serving in another case. Atkinson subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Atkinson asserts that (1) the district court erred in overruling his motion for a directed verdict as to both charges, (2) the evidence was insufficient to support the jury's guilty verdict on both charges, and (3) the sentences imposed by the court were excessive and constituted an abuse of discretion.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal

conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

Sentences within statutory limits will be disturbed by an appellate court only if the sentence complained of was an abuse of judicial discretion. *State v. Ramirez*, 285 Neb. 203, 825 N.W.2d 801 (2013). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

*Burglary.*

Atkinson asserts that the district court erred in overruling his motion for a directed verdict and that the evidence was insufficient to support his burglary conviction.

Section 28-507(1) provides, "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value."

Atkinson acknowledges that the evidence at trial establishes that a burglary was committed and that he was in possession of items stolen in the burglary, but he argues that the evidence was insufficient to show that he was present during or participated in the burglary.

Although there is no direct evidence to show that Atkinson was the person who broke into the Rung residence, ransacked the house for valuables, and stole the television and the LPS laptop, there is strong circumstantial evidence that he was responsible for or participated in the burglary. "Circumstantial evidence" means facts or circumstances, proved or known, from which existence or nonexistence of another fact may be logically inferred or deduced through a rational process. *State v. Rokus*, 240 Neb. 613, 483 N.W.2d 149 (1992).

The record shows that Atkinson and his car were seen in the neighborhood where the burglary took place a number of times on the evening of the break-in at the Rung residence. Although his car was moved a few times, it remained in the vicinity of the walking path which runs behind the Rung residence. While investigating the report of a suspicious car, Tran looked inside Atkinson's car, observed a large television and a laptop computer with an LPS sticker on it, and recorded the identifying numbers from both items, which numbers matched the identifying numbers of the television and the computer reported missing by the Rungs. Atkinson's car also apparently contained the portable heater that had been stolen from the Rungs, although Tran thought it was a large speaker when he observed the items in Atkinson's car.

Contrary to his argument, the State did not need to prove that Atkinson was actually the person who entered the Rung residence and stole the property. The jury was instructed that Atkinson could be found guilty of burglary even if he personally did not commit any act involved in the crime, so long as he aided another in the commission of the burglary. The jury was instructed that Atkinson could be found guilty of burglary if he intentionally helped another commit the burglary, and intended that the burglary be committed or knew or expected that it would be committed, and that the burglary was in fact committed by that other person. Aiding

and abetting requires some participation in a criminal act and must be evidenced by some word, act, or deed. *State v. Kitt*, 284 Neb. 611, 823 N.W.2d 175 (2012). No particular acts are necessary, nor is it necessary that the defendant take physical part in the commission of the crime or that there was an express agreement to commit the crime. *Id.* Mere encouragement or assistance is sufficient. *Id.*

Even if the evidence does not establish that Atkinson personally broke the door to the Rung residence and removed their property, the stolen property was observed in Atkinson's car even before the Rungs discovered and reported the burglary. Once the Rungs reported the burglary, it was determined that the items observed in Atkinson's car were some of the items taken in the burglary. Although the record shows that three people were observed getting out of the car and running through the neighborhood, Atkinson was the only person seen in the car and was the person operating the car during the police pursuit. There is no evidence that anyone other than Atkinson had keys to his car in order to get access to place the stolen goods in it. The evidence supports a conclusion that Atkinson at least aided and abetted the burglary by offering a place to temporarily store and transport the stolen goods. Atkinson's assignment of error is without merit.

*Flight to Avoid Arrest.*

Atkinson asserts that the district court erred in overruling his motion for a directed verdict and that the evidence was insufficient to support his flight to avoid arrest conviction.

Section 28-905(1) provides, "Any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation commits the offense of operation of a motor vehicle to avoid arrest." An attempt to arrest is an essential element of the offense of fleeing in a motor vehicle to avoid arrest, but proof that the defendant actually committed the law violation for which the arrest was attempted is not required. *State v. Claussen*, 276 Neb. 630, 756 N.W.2d 163 (2008).

Before examining the evidence in this case, we consider two cases under § 28-905, one in which the evidence was sufficient to support the conviction and one where the evidence was insufficient. The evidence in *State v. Ellingson*, 13 Neb. App. 931, 703 N.W.2d 273 (2005), was sufficient to support the defendant's conviction for misdemeanor operation of a motor vehicle to avoid arrest. In that case, a police officer had knowledge that another officer wanted the defendant charged in connection with a domestic violence incident. The officer did not verbally announce an arrest, but ordered the defendant to exit the vehicle, after which the defendant fled. Following the chase, the defendant apologized to the officer for driving away while the officer's hand was inside the vehicle and admitted that he had feared being arrested. The emergency lights on the officer's patrol car were engaged at all times during the encounter. This court found the evidence sufficient to show that the officer attempted to arrest the defendant and that the defendant drove away in an attempt to avoid arrest. In contrast, the evidence in *State v. Carman*, 10 Neb. App. 373, 631 N.W.2d 531 (2001), was insufficient to show that the officer made an attempt to arrest the defendant. In that case, the officer clocked the defendant traveling at 57 m.p.h. in a 45-m.p.h. zone. The officer turned his cruiser and accelerated to catch up to the defendant and followed when the defendant turned. The officer lost sight of the defendant's vehicle until he observed its brake lights and activated his cruiser's flashing lights just prior to

the stop. The officer did not activate the cruiser's siren at any point. The defendant stopped once the officer activated his flashing lights. We concluded that there was no attempt to arrest when the officer was following the defendant and thus insufficient evidence to support his conviction under § 28-905.

Atkinson argues that because Fisher testified that he only wanted to conduct an investigation and did not have any basis to arrest the driver of the Taurus, then probable cause for either an arrest or a citation was lacking and he should not have been convicted for flight to avoid arrest. Atkinson's argument ignores the remainder of Fisher's testimony. Fisher did testify that he initially wanted to make a traffic stop of Atkinson's car to conduct an investigation into the suspicious activity surrounding the car. Atkinson stopped his car when Fisher activated his cruiser's overhead lights, but Atkinson took off in his car before Fisher got out of his cruiser. During the 3-minute pursuit that followed, Atkinson ran several stop signs. Fisher's cruiser's lights and siren were activated during the pursuit. Further, Atkinson asked Darling questions about fleeing to avoid arrest during their telephone conversation, which occurred later that evening after the pursuit but before Atkinson's arrest. There was sufficient evidence in the record to support a conclusion that Atkinson operated a motor vehicle to avoid arrest for burglary or to avoid a citation for running one of the stop signs. Atkinson's assignment of error is without merit.

*Excessive Sentences.*

Atkinson asserts that the district court abused its discretion by imposing excessive sentences. Atkinson was convicted of burglary, a Class III felony, and flight to avoid arrest, a Class I misdemeanor. See §§ 28-507(1) and 28-905. The court sentenced him to sentences of imprisonment of 4 to 8 years for burglary and 1 year for flight to avoid arrest, which sentences were to run consecutively to each other and to the sentences he was already serving. Pursuant to Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012), a Class III felony is punishable by 1 to 20 years in prison, a $25,000 fine, or both. Pursuant to Neb. Rev. Stat. § 28-106 (Reissue 2008), a Class I misdemeanor is punishable by 0 to 1 year in prison, a $1,000 fine, or both. Atkinson's sentences were within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Watt*, 285 Neb. 647, ___ N.W.2d ___ (2013). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Atkinson, age 21, was out on parole when he committed these crimes, and the district court took note of that during the sentencing hearing. The presentence report in this case shows that Atkinson's prior record began in his juvenile years. As an adult, he has convictions for third degree assault, disturbing the peace, attempted burglary, thefts, and traffic-related offenses. He scored in the high risk to reoffend category on the "Level of Service/Case Management Inventory." Atkinson points to his gambling addiction as a mitigating factor, which the court

acknowledged and for which the court urged Atkinson to take advantage of mental health programming available through the Department of Correctional Services during his incarceration. The district court took the proper factors into consideration when sentencing Atkinson, and we cannot say that the sentences are excessive. His assignment of error is without merit.

## CONCLUSION

The district court did not err in overruling Atkinson's motion for directed verdict, and there was sufficient evidence to support Atkinson's convictions. Atkinson's sentences were not excessive, and the court did not abuse its discretion in sentencing him.

AFFIRMED.