IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HOLSTAD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEFFREY HOLSTAD, APPELLANT.

Filed May, 31, 2016.    No. A-15-981.

Appeal from the District Court for Washington County, JOHN E. SAMSON, Judge, on appeal thereto from the County Court for Washington County, C. MATTHEW SAMUELSON, Judge. Judgment of district court affirmed.

Alan C. Schroeder for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Jeffrey Holstad appeals his conviction for speeding. On appeal, Holstad argues that the trial court erred in receiving radar evidence of his vehicle's speed because the State failed to present written documentation to establish the reliability of the radar and its testing equipment.

We find that Holstad failed to object to the alleged error at trial and has not presented any assignments of error on appeal as required by Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012). As a result, we review only for plain error, and, finding none, we affirm.

## II. BACKGROUND

Holstad was charged in the county court for Washington County with speeding 36 m.p.h. in a 25 m.p.h. zone in violation of Neb. Rev. Stat. § 60-6,186 (Reissue 2010). At a bench trial, the State's only witness was the Nebraska State Trooper who issued Holstad the speeding ticket, Eric Grossoehme.

Grossoehme testified that on November 1, 2014, he observed a semi-trailer truck driving eastbound on Highway 30 in Blair, Washington County, Nebraska. The posted speed limit in the area was 25 m.p.h. Grossoehme believed the truck was speeding and registered the vehicle's speed at 36 m.p.h. on his radar. Grossoehme stopped the truck and issued a speeding ticket to its driver, Holstad.

Holstad testified at trial that he did not think he was speeding prior to Grossoehme stopping him. According to Holstad, another truck was passing him and he believed Grossoehme's radar registered the other truck's speed rather than Holstad's truck's speed.

The county court found Holstad guilty of speeding and ordered him to pay a $75 fine plus court costs. Holstad appealed his conviction to the district court. On appeal to the district court, Holstad argued that the evidence of his speed was improperly admitted. Following a hearing on Holstad's appeal, the district court affirmed his conviction. The district court found that the county court did not err in receiving Grossoehme's testimony that his radar unit was functioning properly and that the radar registered Holstad traveling at 36 m.p.h.

Holstad appeals. Additional facts will be discussed, as necessary, in the analysis section of this opinion.

## III. ASSIGNMENTS OF ERROR

As noted above, Holstad has not presented any assignments of error in his brief on appeal.

## IV. ANALYSIS

### 1. Impediments to Appellate Review

We are precluded from addressing Holstad's arguments on appeal for two reasons: (1) Holstad failed to object to the alleged error at trial and (2) Holstad has not presented any assignments of error on appeal. We will address these issues in turn.

### (a) Failure to Object

We first address the fact that Holstad failed to object to the lack of documentary evidence regarding the radar and testing equipment's accuracy at trial. Holstad argues that he was not required to object at trial because he could not have known that the State would fail to present documentary evidence of the radar and testing device's reliability until after the State had rested its case. Alternatively, Holstad argues that the State's objection to Grossoehme being required to go home to retrieve documentation "is the equivalent of [Holstad] objecting that certificates are necessary." Appellant's reply brief at 8. We disagree that Holstad preserved error at trial.

The failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

On direct examination, Grossoehme testified to the readout given by his radar on November 1, 2014:

[PROSECUTOR]: And did you attempt to obtain a radar reading on the vehicle that you believed to be speeding?

[TROOPER GROSSOEHME]: I did.

Q. And what was the result of the radar reading?

A. The vehicle was traveling at 36 miles per hour.

Holstad did not object to Grossoehme testifying to the results of the radar reading. Instead, Holstad's attorney cross-examined Grossoehme as follows:

[HOLSTAD'S ATTORNEY]: I do these trials all over the state, and they always -- the -- the county attorney always gives me these kinds of things, certificate of calibration and accuracy and this Vastar [as pronounced] clocking log. This is a certificate for -- certificate of accuracy, a tuning fork certificate.

[TROOPER GROSSOEHME]: Yes. They . . .

Q. And I don't know what they mean, but they -- at least they give me something that looks like you -- they're basing their testimony on something other than their visual estimates and saying they do what they always do and . . .

A. Is that a question?

Q. The -- that's -- that's a -- is that not the policy of Washington County to . . .

A. I can provide the certificate of accuracy for the radar unit and the tuning forks if you'd like.

Q. Okay. Yeah.

A. I would have to go home and get them.

Q. Okay.

A. And I live here in town, if you'd like that.

Q. Okay. Sure.

[PROSECUTOR]: Your Honor, I -- I'd object for the need for the trooper to go home and get the certificates. He's trained . . .

[HOLSTAD'S ATTORNEY]: Well, but, I mean, why do -- would everybody else always give -- why does everybody else give me these and [the prosecutor] doesn't?

[PROSECUTOR]: He's . . .

[HOLSTAD'S ATTORNEY]: I don't -- I go -- I do these all over the state.

[PROSECUTOR]: They must be more diligent than I am, but he's testified to his training.

Following this exchange, the court held that Grossoehme was not required to retrieve the documentation, but that Holstad reserved the right to move to dismiss the case based on insufficient evidence.

After the State rested, Holstad moved to dismiss the case. The court inquired which part of the statute governing the admissibility of radar evidence, Neb. Rev. Stat. § 60-6,192 (Reissue 2010), Holstad believed the State had failed to prove. Holstad did not point to a specific part of the statute, but rather argued that Grossoehme's testimony alone was inadequate. Holstad argued that the State should have been required to produce written documentation of the radar and testing device's accuracy. Under questioning by the court, Holstad admitted that the statute did not

expressly require anything other than oral testimony. The court overruled Holstad's motion to dismiss.

It is apparent from this record that Holstad did not object to the State's alleged failure to present documentary evidence of the radar and testing equipment's reliability. Holstad argues that he should not have been required to object because he was not aware of the State's failure to present such evidence until after it rested its case. However, Holstad argues that documentary evidence should be considered a necessary foundational requirement for the admission of the results of a radar readout. Therefore, the appropriate time for Holstad to have objected would have been when the State attempted to introduce the results of the radar without having laid the foundation which Holstad claims is necessary. Holstad failed to object at that time.

In the alternative, Holstad argues that the State's objection to Grossoehme going home in order to retrieve documentation was the "equivalent" of an objection by Holstad. Holstad cites to no authority stating that an opposing party's objection can preserve error for the non-objecting party. Furthermore, since the State was arguing that the documentation was *not* necessary, it is not clear how Holstad believes such an objection would preserve error on his claim that documentation was, in fact, required. We conclude that Holstad failed to object to the alleged error at trial and as such has not preserved the issue for our review on appeal.

### (b) Failure to Assign Errors

We are further precluded from reaching the merits of Holstad's argument because Holstad fails to assign any errors in his brief on appeal.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015). See, also, Neb. Ct. R. App. P. § 2-109(D)(1)(e) (each assignment of error shall be separately numbered and paragraphed, bearing in mind that consideration of the case will be limited to errors assigned and discussed).

Holstad's brief does not contain a separate section delineating his assignments of error. Instead, Holstad's brief contains a heading titled, "POINT OF ERROR AND ARGUMENT." Appellant's brief at 8. Immediately following the heading is a bolded paragraph which states as follows:

> The trial court erred by allowing the introduction of the alleged rate of speed driven by [Holstad] as measured by the speed measurement device because the State did not, as a matter of law, provide reasonable proof that such measurement and testing equipment were working properly and/or were properly tested. Testimony by the officer that issued the speeding citation that the measurement and testing equipment were working properly and/or were properly tested alone is [ins]ufficient proof as a matter of law to allow the introduction of the alleged measured rate of speed.

Appellant's brief at 8. Holstad's brief then proceeds directly into his argument.

Nebraska courts have repeatedly held that assignments of error consisting of headings or subparts of the argument section do not comply with the mandate of § 2-109(D)(1)(e). *Wilson v. Wilson*, 23 Neb. App. 63, 867 N.W.2d 651 (2015). Holstad's brief therefore fails to comply with the court rule requiring specific assignments of error.

## 2. PLAIN ERROR

An appellate court always reserves the right to note plain error which was not complained of at trial. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003). Similarly, where a party fails to comply with the court rules requiring a separate section setting forth the assignments of error, an appellate court may proceed as though the party failed to file a brief entirely or, alternatively, may examine the proceedings for plain error. *Wilson v. Wilson*, 23 Neb. App. 63, 867 N.W.2d 651 (2015). Therefore, in spite of Holstad's failure to object and failure to assign errors, we reserve the right to review the record for plain error.

Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012).

Neb. Rev. Stat. § 60-6,192(1) requires the State to prove certain elements prior to introducing the results of a speed measuring device. The statute provides:

> (1) Determinations made regarding the speed of any motor vehicle based upon the visual observation of any peace officer, while being competent evidence for all other purposes, shall be corroborated by the use of a radio microwave, mechanical, or electronic speed measurement device. The results of such radio microwave, mechanical, or electronic speed measurement device may be accepted as competent evidence of the speed of such motor vehicle in any court or legal proceeding when the speed of the vehicle is at issue. Before the state may offer in evidence the results of such radio microwave, mechanical, or electronic speed measurement device for the purpose of establishing the speed of any motor vehicle, the state shall prove the following:
>
> (a) The radio microwave, mechanical, or electronic speed measurement device was in proper working order at the time of conducting the measurement;
>
> (b) The radio microwave, mechanical, or electronic speed measurement device was being operated in such a manner and under such conditions so as to allow a minimum possibility of distortion or outside interference;
>
> (c) The person operating the radio microwave, mechanical, or electronic speed measurement device and interpreting such measurement was qualified by training and experience to properly test and operate the radio microwave, mechanical, or electronic speed measurement device; and
>
> (d) The operator conducted external tests of accuracy upon the radio microwave, mechanical, or electronic speed measurement device, within a reasonable time both prior to and subsequent to an arrest being made, and the device was found to be in proper working order.

The Nebraska Supreme Court has elaborated that § 60-6,192(1) requires "reasonable proof that the radar unit was accurate and functioning properly." *State v. Jacobson*, 273 Neb. 289, 290, 728 N.W.2d 613, 616 (2007). To present "reasonable proof" that the primary measuring instrument

that measures the speed of a vehicle was operating correctly, one must show that such device was tested against a device whose instrumental integrity or reliability had been established. *Id.*

At the trial, the State elicited testimony from Grossoehme regarding his training in using radar equipment and the procedures used to ensure the radar's accuracy. Grossoehme testified that he underwent radar training and that he is formally certified to operate radar equipment. According to Grossoehme, at the time he registered Holstad's speed on the radar, there were not "any obstructions or distortions present which would [have] interfere[d] with the [radar] unit working properly." Grossoehme also testified that he checks the calibration of his radar unit with three different tests at the beginning and end of each shift, and that he followed this procedure on November 1 before ticketing Holstad.

According to Grossoehme, the three tests he uses to check the radar are an internal calibration, a light test, and an external test using tuning forks. Trooper Grossoehme testified that the internal calibration occurs automatically when he pushes a test button. The light test involves turning the radar unit on and ensuring that the displays work. Lastly, Trooper Grossoehme testified that he uses one 25 m.p.h. tuning fork and one 40 m.p.h. tuning fork to test his radar in "stationary, same direction and opposite lane modes." According to Trooper Grossoehme, the radar unit and tuning forks are certified annually. Trooper Grossoehme elaborated that the annual certification involves the equipment being examined by a certified technician in Lincoln to assure the devices' accuracy.

In *State v. Kincaid*, 235 Neb. 89, 453 N.W.2d 738 (1990),the officer who had issued a speeding ticket to the defendant based on a radar reading also testified that he had tested the radar against a set of tuning forks. According to the officer in that case, the tuning forks were supplied by the manufacturer and were tested for accuracy at the factory. *Id.* The Nebraska Supreme Court found the officer's testimony to be sufficient foundation for the admission of the radar reading. *Id.*

Grossoehme's testimony that both the radar and tuning forks had been tested and certified by trained technicians within the last year is similar to the officer's testimony in *Kincaid*. In both cases, the officers testified that the devices against which their radars were calibrated had themselves been tested by a qualified third party. Grossoehme also testified that he followed the appropriate testing procedures on the day in question and that there was no interference with the radar reading. Grossoehme's testimony constitutes "reasonable proof" of the radar's accuracy in accordance with *Jacobson, supra*. Cf. *State v. Carman*, 10 Neb. App. 373, 631 N.W.2d 531 (2001) (finding inadequate foundation for admission of radar evidence where officer testified he had never tested the tuning forks used to calibrate the radar and only assumed their accuracy).

We find that the State laid the proper foundation for the admission of the radar reading through Trooper Grossoehme's testimony. Accordingly, we find no plain error and affirm Holstad's conviction and sentence for speeding.

## V. CONCLUSION

Holstad failed to object at trial and failed to present any assignments of error on appeal. Accordingly, we have reviewed the record for plain error and, finding none, we affirm Holstad's conviction and sentence for speeding.

AFFIRMED.