STATE OF NEBRASKA, APPELLEE, V. TRAVIS MILES, APPELLANT.
602 N.W. 2d 666

Filed November 16, 1999.    No. A-99-062.

Byron M. Johnson, Scotts Bluff County Public Defender, and William E. Madelung for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Travis Miles was charged by complaint with third-offense driving under the influence of alcoholic liquor. After a jury trial in July 1998 in the Scotts Bluff County Court, Miles was convicted and sentenced to 90 days in jail, was ordered to pay a $500 fine and $73 in court costs, and had his license suspended for 15 years. Miles appealed to the district court for Scotts Bluff County, which affirmed the conviction.

## I. BACKGROUND

On January 5, 1998, Officer Pete Wysocki, a 10-year veteran of the Scottsbluff Police Department, was patrolling the west side of Scottsbluff, Nebraska. While on patrol, he observed a pickup truck in front of him, traveling north on Avenue I. When he saw the vehicle jerk erratically, Wysocki turned on his overhead camera. He then observed the truck weave and cross the centerline for a few seconds. Wysocki activated the lights on his cruiser and pulled the truck over. The officer asked the driver, Miles, for his license, registration, and proof of insurance. While Miles was searching for these items, Wysocki noticed an odor of alcohol coming from the inside of the vehicle. Miles was the only person in the truck. When asked, Miles told Wysocki that he had been drinking earlier, but that he was willing to take sobriety tests. Wysocki thereafter conducted sobriety tests on Miles.

According to Wysocki, Miles was unable to perform field sobriety tests satisfactorily. Wysocki testified, and the video from his cruiser shows, that Miles lost his balance and did not count accurately during two attempts at the one-legged stand and that he lost his balance when performing the heel-to-toe sobriety maneuver. Wysocki stated that Miles was weaving when he performed the test in which the subject stands with his feet together with his hands at his side and head back with his eyes closed. When Wysocki asked Miles to count from 57 to 49, Miles counted 47, 48, 49, 50. At that point, Wysocki repeated the directions for the test to Miles, but Miles again failed.

Based upon his observations and his education, training, and law enforcement experience, Wysocki formed the opinion that Miles was under the influence of alcohol and arrested him on

suspicion of driving while intoxicated. Wysocki then transported Miles to the Scotts Bluff County jail.

At the time of Miles' arrest, Wysocki held a valid Class B permit to operate an Intoxilyzer 5000 machine. Following the 15-minute statutory observation period, Wysocki conducted the test and obtained the result. Wysocki testified that he conducted the test in accordance with the rules and regulations of the Nebraska Department of Health and Human Services (DHHS). The Intoxilyzer test result, received over Miles' foundation and relevancy objections, established that Miles had .203 grams of alcohol per 210 liters of breath.

Sgt. Lyle Powell of the Scottsbluff Police Department is the maintenance calibration supervisor for the Intoxilyzer 5000 machine which was used by Wysocki to test Miles' alcohol level. Both Powell and Wysocki testified that the Intoxilyzer was properly maintained and calibrated at the time of the test. However, Miles argued, both at trial and on appeal to the district court, that the test was improperly conducted. He alleges that the procedures mandated by DHHS with regard to testing alcohol levels, as codified in title 177 of the Nebraska Administrative Code, were not followed. Miles was found guilty and sentenced as we have previously detailed.

Miles appealed to the district court for Scotts Bluff County, alleging that the judgment of the county court should be reversed due to improper evidence before the jury. The district court found that the county court did not err in admitting the Intoxilyzer result, and affirmed Miles' conviction and sentence. Miles then timely perfected his appeal to this court.

## II. ASSIGNMENTS OF ERROR

Miles assigns two errors as follows: (1) The result of the Intoxilyzer test should not have been admitted, and (2) the State adduced insufficient evidence to prove beyond a reasonable doubt that he had committed the crime alleged.

## III. STANDARD OF REVIEW

The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court.

*Carpenter v. Cullan*, 254 Neb. 925, 581 N.W.2d 72 (1998); *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997).

▪ The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below, according deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997); *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997).

▪ Regardless of whether evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as failure to direct a verdict, insufficiency of evidence, or failure to prove a prima facie case, the standard of review is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998).

## IV. ANALYSIS

### 1. ISSUES REGARDING EVIDENCE

#### (a) Intoxilyzer Test Result

Miles first argues that the result of the Intoxilyzer test, which showed the alcohol level in his body to be .203 grams of alcohol per 210 liters of breath, should not have been admitted by the trial court. He argues that the procedure used by Wysocki was in violation of the rules and regulations relating to testing alcohol content levels set by DHHS in title 177. Specifically, Miles asserts that the Intoxilyzer presented an inaccurate result, because the practice of the calibration supervisor was to pour the simulator solution which was used to test the Intoxilyzer's calibration back into the simulator solution container. He asserts that this procedure does not conform with title 177.

■ Operating rules for the Class B permit for determining alcohol content levels are provided in 177 Neb. Admin. Code, ch. 1, § 007 (1990). Section 007.05D4 provides: "Alcohol breath simulator solution in use shall not be poured back into the container of unused solution. The unused portion can be used also for up to twenty analyses." However, § 007.05D6 specifically provides: "The alcohol breath simulator solution used with the Intoxilyzer Model 5000 with vapor recirculation system shall not be used for more than one hundred analyses." In addition, § 007.04C3a provides in pertinent part: "Simulator solution shall not be used for more than 20 analyses or more than one hundred analyses for testing devices equipped with the vapor recirculation system." Obviously, the rules contemplate that at least some portion or aspect of the solution will be "reused." In construing and applying rules and regulations, this court will accord deference to an agency's interpretation of its own regulations. See, *Vinci v. Nebraska Dept. of Corr. Servs., supra*; *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev., supra*.

Powell testified that DHHS sends out a set amount of simulation solution to the Scotts Bluff County jail to be used with the Intoxilyzer. This solution has a known alcohol content value and is used to ensure that the Intoxilyzer provides accurate readings. On January 7, 1997, solution sample No. 497 was certified by Margaret Vencil of DHHS as having a value of .10 grams of alcohol per 210 liters of simulated breath. Powell testified that at the time of Miles' arrest, the simulator solutions were good for a period of 1 year or 20 tests. The usage record from the solution established that the solution used to calibrate the machine during Miles' test, No. 497, had been used five times before Miles' test. Miles' alcohol level was tested on January 5, 1998, within 1 year of the certification of solution No. 497.

Powell testified that to ensure that the Intoxilyzer is operating properly, a 190-day check is performed, as well as a 40-day check. During the 190-day checks, a sample provided by DHHS is introduced into the instrument which gives a reading that is provided to the State to verify that the reading is within the target value of the sample. The percentage of alcohol in the sample is not known to Powell. After that check is verified, a 40-day check is performed, which is a general check to ensure that the

internal standards are within the tolerances to provide accurate readings.

A 190-day check verifying the Intoxilyzer's accuracy was performed on August 4, 1997. A 40-day check was performed on December 3, 1997, which was still valid at the time of Miles' test on January 5, 1998. This test yielded standards within an acceptable range. Powell stated that based upon his training and experience, the Intoxilyzer was functioning properly on January 5, 1998, and that the procedures used for the Intoxilyzer and the simulator solution were in accordance with the requirements of title 177. The defense offered no evidence that the Intoxilyzer was not working properly when Miles was tested.

Miles argues that the Intoxilyzer result should not have been admitted into evidence because Powell testified that after the simulator solution is used to test the machine, the "unused portion" is poured back into the container which violates § 007.05D4, which provides that "[a]lcohol breath simulator solution in use shall not be poured back into the container of unused solution." The regulation concludes with "[t]he unused portion can be used also for up to twenty analyses." Powell's testimony was that the "used solution" is that portion of the solution which is discharged into the surrounding air after the test and that it is permissible to pour the remaining simulator solution back into the container for future "use" (up to 20 analyses) from a given vial of simulator solution. The county court accepted Powell's testimony and his interpretation of the regulations.

Construction of the regulations is a matter of law in connection with which an appellate court has an obligation to reach an independent determination regardless of the ruling of the court below. See *In re Estate of Holt*, 246 Neb. 50, 516 N.W.2d 608 (1994). Clearly, the regulation contemplates that the contents of the simulator solution vial, in this case No. 497, will not just be used for one verification because § 007.05D4 specifically provides that the unused portion can be used for up to 20 analyses, and DHHS is obviously including more than that required for a single test in each vial because all of the vial must be poured into the Intoxilyzer to get it filled to the proper level to analyze the solution. Thus, if the portion which is not vaporized by the test could not be used again, the regulations allowing up

to 20 analyses from one vial of solution in 1 year's time would be meaningless. Therefore, for purposes of the regulations at issue, the used portion of the simulator solution (which is prohibited from reuse) is that which is vaporized and discharged into the air, and the unused portion, which may be used for the next analyses of the Intoxilyzer, is what is left and returned to the container supplied by DHHS, in this case vial No. 497. As a result, we find no violation of the procedures mandated by DHHS in title 177 in the way Powell used and handled the simulator solution.

### (b) Authentication

■ Miles argues that exhibit 8, the breath simulator solution usage record, was not properly authenticated. We disagree. A document is authenticated when evidence is presented that is "sufficient to support a finding that the matter in question is what its proponent claims." Neb. Rev. Stat. § 27-901 (Reissue 1995). This can be done in various ways, including by way of "[t]estimony that a matter is what it is claimed to be" and "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." *Id.* This was done, and this claim is without merit as to exhibit 8.

### (c) Inadequate Foundation for Powell's Opinion

Miles argued that Powell did not have the appropriate foundation to render the testimonial opinion that the Intoxilyzer 5000 was working properly. Opinion evidence which is unsupported by appropriate foundation is not admissible. *State v. Clark*, 255 Neb. 1006, 588 N.W.2d 184 (1999); *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996). Without belaboring the matter, the evidence reveals that Powell was in charge of periodically checking the machine via the 40- and 190-day checks. Those procedures are obviously designed in an objective and scientific way to ensure that the machine continues to be maintained so as to produce accurate results. As the person doing the periodic testing and knowing the results, we think that Powell has the requisite foundation to render an opinion about the accuracy and effectiveness of the machine. There was no error in allowing Powell to give his opinions about the machine.

## 2. CONVICTION ON BASIS OF OTHER SUFFICIENT EVIDENCE OF DRIVING UNDER INFLUENCE

Putting aside the Intoxilyzer result, we also find that Wysocki's testimony and the videotape of the stop supply ample support for the finding that Miles was driving under the influence of alcoholic liquor. Either a law enforcement officer's observations of a defendant's intoxicated behavior or the defendant's poor performance on field sobriety tests constitutes sufficient evidence to sustain a conviction of driving under the influence of alcoholic liquor. *State v. Lichti*, 219 Neb. 894, 367 N.W.2d 138 (1985). See, *State v. Green*, 217 Neb. 70, 348 N.W.2d 429 (1984); *State v. Morse*, 211 Neb. 448, 318 N.W.2d 893 (1982); *State v. Betts*, 210 Neb. 348, 314 N.W.2d 257 (1982).

Wysocki testified that in his opinion, Miles was under the influence, and Wysocki obviously produced evidence that Miles had been driving. The statute under which Miles was charged, Neb. Rev. Stat. § 60-6,196 (Reissue 1993), is such that a violation may be proved in one of two ways: by the test result of the alcohol content level or by the observations of the officer. See *State v. Tatara*, 230 Neb. 279, 430 N.W.2d 692 (1988). Thus, even disregarding the breath test, there was ample evidence to sustain Miles' conviction on the alternative ground. See *State v. Green*, 238 Neb. 328, 342, 470 N.W.2d 736, 748 (1991) (statute provides for "alternate offenses").

## V. CONCLUSION

The result of Miles' Intoxilyzer test was properly admitted, and there was no error in verifying the accuracy of the machine by using the simulator solution in the manner so used in this case. Additionally, the conviction can be affirmed on the basis of the alternative offense found in § 60-6,196.

AFFIRMED.