STATE OF NEBRASKA, APPELLEE, V.
LEON TAYLOR, APPELLANT.
666 N.W.2d 753

Filed July 29, 2003.   No. A-02-828.

Thomas A. Fitch, of Fitch Law Firm, for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

IRWIN, Chief Judge, and CARLSON and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Leon Taylor was convicted by a jury of operating a motor vehicle to avoid arrest pursuant to Neb. Rev. Stat. § 28-905 (Reissue 1995), a Class IV felony. The district court for Dakota County, Nebraska, also found Taylor to be a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 1995). For the reasons set forth herein, we affirm.

## BACKGROUND

Matthew Hattermann, a police officer for the city of South Sioux City, Nebraska, was on duty the evening of October 30, 2001, and was en route to meet another police officer to work an arrest warrant. While driving his marked police cruiser, Hattermann observed a vehicle with Montana license plates stopped in front of him at a red traffic light. Hattermann described the vehicle as a "newer model" red (later identified as maroon) two-door Chrysler Sebring convertible with a tan top. Hattermann testified that because "[w]e don't see a lot of far away state plates on newer model vehicles" and because of the possibility that the vehicle might be stolen, Hattermann requested a license plate check on the vehicle. The stoplight turned green, and the Chrysler Sebring turned and proceeded southbound on the highway bypass. Hattermann continued on in another direction to meet an Officer Cleveland, since Hattermann had not received an immediate response from the police communications department regarding the license plate check. After Hattermann met up with

Cleveland, Hattermann was informed by the police communications department that the vehicle was a 2001 maroon Chrysler Sebring convertible that was possibly stolen out of Missoula, Montana, and that the police communications department was going to confirm the information with the Missoula Police Department. Hattermann notified Cleveland of the situation, and both officers proceeded to the bypass to locate the vehicle. Shortly thereafter, the officers spotted the vehicle, confirmed that it was the vehicle Hattermann had seen at the stoplight, and also received confirmation that the vehicle was in fact stolen. Hattermann then made contact with his superior officer and coordinated a "felony stop," which was described as a traffic stop that involves at least two to three officers. Hattermann further described that when a felony stop is made, the officers line up their police cruisers around the subject being stopped, draw their weapons, order the subject out of the vehicle, and take the subject into custody. Hattermann testified that the reason for making a felony stop in this situation was based on the facts that it is a felony to have possession of a stolen motor vehicle; that there are dangers involved with stolen motor vehicles; and that it is a safety issue for the police officers, the suspect, and the public.

Before initiating the felony stop, Hattermann positioned his police cruiser directly behind the Chrysler Sebring, with Cleveland in his police cruiser following behind Hattermann. Hattermann initiated the felony stop by turning on the overhead emergency lights and siren on his police cruiser (as did Cleveland), which then turned on the video camera in Hattermann's police cruiser. The videotape made of the events that evening was received into evidence, which videotape depicts Hattermann's attempt to stop the vehicle. The driver of the vehicle refused to stop, accelerating his speed to approximately 80 to 85 miles per hour in a 50-mile-per-hour zone. Hattermann's pursuit of the vehicle eventually ended with the disregard of a four-way stop sign at an intersection by the driver of the Chrysler Sebring, which resulted in a collision with another vehicle that spun both cars out of control. The police cruisers were not involved in the accident.

Immediately after the accident, Hattermann and Cleveland made contact with the driver of the stolen vehicle, who was later

identified as Leon Taylor. Rescue units were called for Taylor and the occupants of the other vehicle involved in the collision, all of which were transported to the local hospital.

At trial, Taylor testified on his own behalf. When questioned about the events that occurred on the evening of October 30, 2001, Taylor indicated that he was on his way back to Montana to return the vehicle he was driving. Taylor stated that he had previously rented the vehicle and that the rental agreement had been extended. However, Taylor later stated on cross-examination that the vehicle was not actually rented under his name and refused to disclose who had rented it. Taylor admitted that he saw the officers behind him with their police cruisers' overhead emergency lights and sirens on. Taylor further admitted that when the police officers attempted to stop him, Taylor had no intention of stopping based upon his recent observations, following the terrorist attacks in September 2001, of law enforcement agents "manhandl[ing]" people who were being pulled over on the highway.

Taylor was convicted by a jury of operating a motor vehicle to avoid arrest and was later determined by the sentencing judge to be a habitual criminal. Taylor was sentenced, with a habitual criminal enhancement, to serve 10 to 15 years in prison. Taylor timely appealed.

## ASSIGNMENTS OF ERROR

On appeal, Taylor alleges that (1) there was insufficient evidence to support his conviction and (2) the district court erred in finding that Taylor was a habitual criminal.

## STANDARD OF REVIEW

■ When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002).

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by

the court below. *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002).

## ANALYSIS

*Sufficiency of Evidence.*

Taylor alleges that there was insufficient evidence to support his conviction of operating a motor vehicle to avoid arrest. Specifically, Taylor argues that the State failed to offer any evidence to show that Taylor violated a state law that constituted a felony, an essential element of the crime.

We first note that count II, on the face of the information, reflects that Taylor was charged with violation of § 28-905(1), operating a motor vehicle to avoid arrest, which states:

Any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation for the violation of any law of the State of Nebraska constituting a misdemeanor, infraction, traffic infraction, or any city or village ordinance, except nonmoving traffic violations, commits the offense of *misdemeanor* operation of a motor vehicle to avoid arrest.

(Emphasis supplied.)

However, the face of the information also identifies count II as a Class IV felony, which is the penalty for violation of § 28-905(2). Further, in the body of the information, count II states that Taylor "did operate a motor vehicle to flee in such vehicle in an effort to avoid arrest for the violation of any law of the State of Nebraska constituting a felony," which is consistent with a violation of subsection (2) of § 28-905 rather than subsection (1).

Generally, to charge the defendant with the commission of a criminal offense, an information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute or in language equivalent to the statutory terms defining the crime charged. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). While Taylor does not raise this point as an issue on appeal, we do not believe the discrepancy in this instance constitutes plain error, because the substance of the information alleges each statutorily essential

element of the crime charged, which was sufficient to inform Taylor of the charge being made against him.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Keup*, 265 Neb. 96, 655 N.W.2d 25 (2003). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Long*, 264 Neb. 85, 645 N.W.2d 553 (2002).

An attempt to arrest is an essential element of the offense of fleeing in a motor vehicle to avoid arrest, but proof that the defendant actually committed the law violation for which the arrest was attempted is not required. *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979); *State v. Carman*, 10 Neb. App. 373, 631 N.W.2d 531 (2001). In *State v. Clifford, supra,* the Supreme Court stated that the offense of fleeing in a motor vehicle to avoid arrest is separate and distinct from any offense for which law enforcement officers were attempting to make the arrest, which proposition was again later articulated in *State v. Carman, supra*. Thus, the question is not whether the State proved that Taylor was guilty of theft, but, rather, whether the State proved an attempt to arrest as an essential element of the offense of operating a motor vehicle to avoid arrest.

The evidence shows that after Hattermann received confirmation from the police communications department that the vehicle in question was stolen, he coordinated with another officer located in the nearby area to assist him in making a felony stop of Taylor. After Hattermann located the vehicle, he activated his police cruiser's overhead emergency lights and siren, which then automatically turned on the video camera mounted on the dashboard of his police cruiser. The evidence shows that the officers attempted to stop the vehicle and that Taylor attempted to flee from the police. The videotape in Hattermann's cruiser was

received into evidence and played for the jury. The videotape accurately depicted Hattermann's description of the events that occurred that evening. Finally, the most compelling evidence to prove the offense of fleeing in a motor vehicle to avoid arrest came from Taylor's own testimony, wherein he admitted that despite seeing the police cruisers behind him with their overhead emergency lights activated and hearing their sirens, he intentionally chose not to stop.

After viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to support Taylor's conviction for operating a motor vehicle to avoid arrest and that the State proved the essential element of its attempt to arrest Taylor.

Further, Taylor argues that the State failed to offer any evidence to show that Taylor violated a state law that constituted a felony. Section 28-905(2) states: "Any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest for the violation of any law of the State of Nebraska constituting a felony commits the offense of felony operation of a motor vehicle to avoid arrest." While Taylor acknowledges that the State is not required to prove the underlying law violation, i.e., theft, he argues that "some articulable evidence" that the theft violation was a felony level theft is necessary. Brief for appellant at 10. Taylor cites to Neb. Rev. Stat. § 28-518(2) (Reissue 1995), the theft by receiving stolen property statute, which provides that the theft constitutes a Class IV felony when the value of the thing involved is $500 or more, but not over $1,500. Taylor argues that the State did not present any evidence both that the officer was pursuing Taylor for a theft charge and that the object of the theft was valued at more than $500.

While there is an absence of Nebraska case law that provides guidance concerning Taylor's argument that there should have been some articulable evidence that the theft violation was a felony level offense, the following is somewhat helpful in our analysis: In *State v. Merritt*, 805 S.W.2d 337 (Mo. App. 1991), the defendant was convicted of felony resisting arrest in connection with a deputy sheriff's attempt to arrest the defendant for the sale of marijuana. On appeal, the defendant alleged that there was insufficient evidence to sustain his conviction because the

State did not establish that he was being arrested for a felony. In relevant part, the Missouri law under which the defendant was charged and convicted required that the resisting arrest charge could only be a felony offense if the underlying offense was a felony, with the relevant inquiry being whether there was evidence that the deputy, at the least, contemplated making a felony arrest on the ground that the defendant was guilty of the underlying felony offense. The Missouri Court of Appeals found that the testimony of the arresting officer regarding the arrest was sufficient to sustain the conviction.

We agree with Taylor that there must be some articulable evidence that the underlying violation for which he was fleeing to avoid arrest constituted a felony in order to convict him pursuant to § 28-905(2), as opposed to § 28-905(1), the misdemeanor operation of a motor vehicle to avoid arrest. As in *Merritt*, the testimony of Hartmann in the instant case regarding the arrest was sufficient to sustain Taylor's conviction. Hartmann testified that just prior to attempting to arrest Taylor, Hartmann received confirmation that the vehicle, a 2001 Chrysler Sebring, was stolen and thereafter contacted his supervisor to coordinate a felony stop. With regard to the value of the stolen vehicle, it is obvious that the value, at the very least, exceeded $500 based upon the fact that it was positively identified as a 2001 model vehicle and the incident occurred in October 2001. In addition, the vehicle portrayed in the videotape of the chase was that of a newer model convertible in good condition.

Therefore, viewing the evidence in the light most favorable to the State, there was sufficient evidence to show that the officers at the very least contemplated making a felony arrest, because they had received confirmation that Taylor was in possession of stolen property and because the property in question was a newer model Chrysler Sebring convertible. Thus, there was evidence that the officers contemplated a felony arrest, and there was circumstantial evidence that the stolen property was worth more than $500, making it a felony level offense. One accused of a crime may be convicted on the basis of circumstantial evidence if, viewed as a whole, the evidence establishes the guilt of the defendant beyond a reasonable doubt. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991). See *State v. Schwab*, 235 Neb. 972,

458 N.W.2d 459 (1990). We conclude that there was sufficient evidence presented to support a conviction for felony operation of a motor vehicle to avoid arrest. This assignment of error is without merit.

*Habitual Criminal.*

Taylor next contends that the district court erred in finding Taylor to be a habitual criminal pursuant to § 29-2221, because the State failed to provide an "authenticated copy" of the former judgments and convictions. Brief for appellant at 11.

Taylor was charged in count II as a habitual criminal under § 29-2221. Section 29-2221 does not create a separate offense, but, rather, provides for enhanced punishment where a defendant is found to be a " 'habitual criminal.' " *State v. Burdette,* 259 Neb. 679, 706, 611 N.W.2d 615, 636 (2000). Under § 29-2221(1), a defendant convicted of a felony may be deemed a habitual criminal if the defendant has been (1) twice previously convicted of a crime, (2) sentenced, and (3) committed to prison for terms of not less than 1 year each. *State v. Burdette, supra.* Generally, one deemed to be a habitual criminal shall be punished by imprisonment for a mandatory minimum term of 10 years and a maximum term of not more than 60 years upon each conviction for a felony committed subsequent to the prior convictions used as the basis for the habitual criminal charge. *Id.*

Neb. Rev. Stat. § 29-2222 (Reissue 1995) provides:

> At the hearing of any person charged with being an habitual criminal, a *duly authenticated copy* of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

(Emphasis supplied.)

Requirements of "authentication" are governed by Neb. Rev. Stat. § 27-901 (Reissue 1995). A document is authenticated when evidence is presented that is " 'sufficient to support a finding that the matter in question is what its proponent claims.' " *State v. Miles,* 8 Neb. App. 844, 850, 602 N.W.2d 666, 671 (1999), quoting § 27-901. Accord *State v. Miller,* 11 Neb. App. 404, 651

N.W.2d 594 (2002). Under § 27-901, authentication can be accomplished in various ways, including by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

In *State v. Linn*, 248 Neb. 809, 812, 539 N.W.2d 435, 438 (1995), the Nebraska Supreme Court stated: "In order to establish evidence's sufficient probative force to prove an earlier conviction for the purpose of sentence enhancement, the evidence must, with some trustworthiness, reflect a court's act of rendering judgment." In *Linn*, the Supreme Court found that an unsigned judgment of a prior driving under the influence of alcohol (DUI) conviction could not be used for sentence enhancement for a third-offense DUI conviction, despite a stipulation in the record of another DUI conviction that it had been the defendant's second DUI offense.

Later, in *State v. Fletcher*, 8 Neb. App. 498, 511-12, 596 N.W.2d 717, 726-27 (1999), a habitual criminal case, this court stated that § 29-2222 is a "statutory 'recipe' for proving former judgments and commitments for habitual criminal purposes [and that] [t]he Legislature has expressly provided that a duly authenticated copy of the 'former judgment and commitment' is competent and prima facie evidence thereof." In *Fletcher*, documents consisting of certified copies of the complaint, commitment, and various trial docket entries (unsigned), and computer printouts of the judge's minutes (also unsigned) were all found to be appropriate record evidence for enhancement purposes.

In the instant case, the State offered into evidence judicial court records from the states of Wisconsin (exhibit 2), Illinois (exhibit 3), and California (exhibit 4). The district court received into evidence exhibits 3 and 4, which were considered by the court in making the habitual criminal determination. Exhibit 3 consists of 10 pages of documentation from the Illinois Department of Corrections. The cover page contains the heading "Certification of Record," notes in part that the copies being provided were made from the "original master file of; Leon Taylor," and has two signatures that indicate each individual was a "Microfilm Operator." The other pages contain information showing that Taylor pled guilty to attempted rape in 1978 in the

Circuit Court of Cook County, Illinois, for which he was sentenced to 1 to 5 years in prison; other judicial records containing information about his sentence; and a copy of Taylor's fingerprints taken in connection with the conviction. Exhibit 4 contains 17 pages of documentation that are "certified copies" of the records provided by the State of California Department of Corrections to the Dakota County Attorney's office, with each document reflecting a stamp on the back that certifies the document is a true and correct copy of the original document. These documents contain a chronological history of Taylor's encounters with the California legal system and include copies of judgments showing that Taylor was convicted of automobile theft three times, second degree burglary, and receiving stolen property. The documents also show that Taylor was sentenced to 3 years for each automobile theft conviction, 2 years for second degree burglary, and 3 years for receiving stolen property. The California records also include a copy of Taylor's fingerprints maintained by the State of California. We note that the California records reflect the name "Jerome Williams," with the name "Leon Taylor" being an alias. In proving that "Jerome Williams" was in fact "Leon Taylor," the State presented the expert testimony of Linda Brokofsky of the Nebraska State Patrol. Brokofsky was shown to be a highly qualified fingerprint examiner that has worked in the field for over 20 years. Brokofsky testified that the sets of fingerprint records maintained by Nebraska, Illinois, and California all show that they are in fact Taylor's fingerprints. See *State v. Luna*, 211 Neb. 630, 319 N.W.2d 737 (1982) (fingerprint identity testified to by qualified expert is perhaps best known method of highest probative value in establishing identification and existence of a prior conviction; identity of accused as person convicted may be shown by any competent evidence, including oral testimony of accused and duly authenticated records maintained by courts or penal and custodial authorities).

Based upon the foregoing, we conclude that exhibits 3 and 4, containing evidence of Taylor's previous convictions, were properly authenticated. We further conclude that exhibits 3 and 4 demonstrated that Taylor had been twice previously convicted of a crime, sentenced, and committed to prison for terms of not less than 1 year each, both of which established, with some

trustworthiness, the required convictions. This assignment of error is without merit.

## CONCLUSION

We conclude that there was sufficient evidence to support Taylor's conviction, and we further conclude that the district court did not err in finding that Taylor was a habitual criminal.

AFFIRMED.