IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. VALERIANO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CRUZ G. VALERIANO, JR., APPELLANT.

Filed November 21, 2017.    No. A-17-211.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge. Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Cruz G. Valeriano, Jr., was convicted of assault by a confined person after he fought with a fellow inmate at the Scotts Bluff County jail. Valeriano was sentenced to incarceration for 24 to 36 months. On appeal, Valeriano assigns as error that there was insufficient evidence as a matter of law to sustain his conviction and that the district court erred in refusing to give a self-defense instruction to the jury and in imposing an excessive sentence. We affirm.

### BACKGROUND

On May 18, 2016, officers with the Scotts Bluff County jail responded to an assault involving two inmates in the Center's F-Pod. They found inmates Valeriano and Timothy Trujillo

had both sustained injuries in an apparent altercation. After investigating the circumstances of the injuries, the State charged Valeriano with assault by a confined person, a Class IIIA felony.

At Valeriano's trial, the State presented the testimony of five witnesses, each of whom worked for the jail. Collectively, their testimony confirmed that both Trujillo and Valeriano were jail inmates and that the jail employees responded to the altercation after an inmate pressed an emergency button inside of the F-Pod. The State's witnesses testified about the extent of Trujillo's injuries. The State also offered a DVD of soundless surveillance footage of the incident.

The footage begins by showing Trujillo, Valeriano, and several other inmates sitting in the F-Pod common area. Trujillo approached a table where Valeriano sat by himself. While at Valeriano's table, Trujillo waved his arms at Valeriano. Trujillo then left Valeriano's table, went up the pod's stairs, and entered his cell. After a few moments, Valeriano stood and went up the stairs. When Valeriano reached the top landing, he removed his clothing as Trujillo opened his cell door to allow Valeriano to enter his cell.

After Valeriano and Trujillo shut the cell door, the other inmates left the F-Pod common area, went up the stairs, and looked into Trujillo's cell through a window in the door. One of the inmates opened the door, revealing Valeriano standing above what appeared to be Trujillo on the floor. Valeriano repeatedly stomped at Trujillo with his right foot. The inmate closed the door and proceeded to the common area. Soon thereafter, Valeriano exited Trujillo's room in his underwear and walked across the landing out of the surveillance camera's range while several of the jail employees entered the F-Pod. The video concludes with the jail employees hauling Trujillo from the F-Pod.

At the conclusion of the evidence, Valeriano asked the court to tender a jury instruction on the issue of self-defense. He argued that because he was injured in the altercation, evidence existed to support a theory of self-defense. The court denied the jury instruction, reasoning that because Valeriano unjustifiably placed himself in harm's way when he entered Trujillo's cell, the evidence did not support a self-defense instruction. The jury unanimously found Valeriano guilty of assault by a confined person. The court sentenced him to 24 to 36 months' imprisonment. Valeriano appeals.

## ASSIGNMENTS OF ERROR

Valeriano assigns the district court erred in (1) finding sufficient evidence as a matter of law to convict him, (2) refusing to give a self-defense instruction to the jury, and (3) imposing an excessive sentence.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by

the court's refusal to give the tendered instruction. *State v. Scherbarth*, 24 Neb. App. 897, 900 N.W.2d 213 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v.* Jones, 297 Neb. 557, 900 N.W.2d 757 (2017). A judicial "abuse of discretion" exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

ANALYSIS

*Sufficiency of Evidence.*

Valeriano asserts there was insufficient evidence as a matter of law to sustain his conviction for assault of a confined person. As discussed below, because appellate courts do not reweigh evidence and there was sufficient evidence in this case to support the conviction, we find this assigned error to be without merit.

In reviewing a sufficiency of the evidence claim, regardless of whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. The finder of fact determines those matters. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017). Instead, in the absence of prejudicial error, an appellate court will affirm a conviction if the evidence admitted at trial, viewed most favorably to the State, is sufficient to support the conviction. *Id.*

The assault by a confined person statute provides, in relevant part, "[a]ny person (a)(i) who is legally confined in a jail or an adult correctional or penal institution . . . and (b) who intentionally, knowingly, or recklessly causes bodily injury to another person shall be guilty of a Class IIIA felony." Neb. Rev. Stat. § 28-932(1)(Reissue 2016). Viewing the evidence in a light most favorable to the prosecution, we find the State provided sufficient evidence to prove each of the statutory elements. Thus, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The State proved--and Valeriano does not contest--that Valeriano was confined in jail at the time of the assault. Valeriano limits his arguments to the second element of assault by a confined person: whether he caused bodily injury to another. He asserts the State's circumstantial evidence that he assaulted another inmate is insufficient to convict him. We disagree. Circumstantial evidence is adequate to support conviction if the evidence, taken as whole, establishes guilt beyond reasonable doubt. *State v. Taylor*, 12 Neb. App. 58, 666 N.W.2d 753 (2003); *State v. Russell*, 243 Neb. 106, 497 N.W.2d 393 (1993). A fact proved only by circumstantial evidence in a criminal prosecution is nonetheless a proven fact. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016). It is not inherently less probative than direct evidence. *Id.*

The State presented both a surveillance video and the testimony of several witnesses to support Valeriano's assault of Trujillo. The surveillance video recorded Valeriano following Trujillo into his cell. The video further shows Valeriano stomping with his right foot at what appeared to be Trujillo lying on the floor. One jail employee testified that after she watched Valeriano walk out of the cell, she saw Trujillo in the same cell washing blood from his obvious

injuries. Another jail employee testified that when Valeriano left the cell, Trujillo had an injury to his left eyelid and a laceration on his left cheekbone that medical professionals later stitched shut. Given this evidence, we find a rational trier of fact could have concluded beyond a reasonable doubt that Valeriano intentionally, knowingly, or recklessly injured Trujillo. See *State v. Alford*, 278 Neb. 818, 774 N.W.2d 394 (2009) (finding circumstantial evidence and the rational inferences were sufficient to convict a criminal defendant of assault by a confined person).

*Jury Instruction.*

Next, Valeriano argues the district court erred in failing to give a self-defense instruction to the jury. A trial court must instruct the jury on the issue of self-defense when any evidence raises a legally cognizable claim of self-defense. *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006). But if the trial evidence does not support a claim of self-defense, the court should not instruct the jury on it. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999). Here, the evidence did not warrant an instruction on the issue of self-defense. As a result, the district court did not err when it refused to give Valeriano's proposed instruction to the jury.

Generally, the use of force upon another person is justifiable when the actor believes the force is immediately necessary for the purpose of protecting himself or herself against the use of unlawful force by the other person on the present occasion. Neb. Rev. Stat. § 28-1409 (Reissue 2016). To successfully assert a claim of self-defense, one must have a reasonable and good faith belief in the necessity of using force. *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012). If a defendant has unjustifiably placed himself or herself in harm's way, a court may properly find that such facts do not support a lawful claim of self-defense. See *State v. Urbano*, *supra*.

For example, in *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997), a bar patron accused the defendant of striking him while they drank together at a local bar. At trial, a witness testified that before the incident, she saw the defendant and the bar patron speaking together. She further testified the bar patron made "an aggressive provocative move" upward toward the defendant's throat with a beer bottle in his hand. She related that in response, the defendant struck the bar patron. Despite the witness' testimony, the district court refused to tender an instruction concerning self-defense. On appeal, the Nebraska Supreme Court found the district court's failure to tender an instruction on self-defense was reversible error. *Id.* The Supreme Court reasoned that because the defendant presented evidence that supported a self-defense theory, Nebraska law required the district court to give an instruction on the issue of self-defense. *Id.*

However, in *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998), the Nebraska Supreme Court affirmed a trial court's refusal to tender a jury instruction on self-defense. *Id.* The defendant in *Marshall* lived with a woman. The woman's former beaux and a passenger drove to the defendant's house to retrieve a necklace the former beaux gave to the woman during their relationship. After retrieving the necklace, the former beaux sat in his car with the door ajar, preparing to drive away. While the former beaux and his passenger waited in the driveway, the defendant approached their car and verbally threatened them. In response, both the former beaux and his passenger reached under their seats for firearms and moved to exit their vehicle. The defendant, who was also armed, shot the former beaux and his passenger. The district court rejected the defendant's request to tender a jury instruction on self-defense. On appeal, the defendant

argued the district court's refusal to instruct the jury on the issue of self-defense was reversible error. He claimed that because the former beaux and his passenger threatened him with deadly force, the evidence raised a legally cognizable claim of self-defense. The Nebraska Supreme Court rejected his argument. The Court reasoned that the criminal defendant unjustifiably placed himself in harm's way when he approached the former beaux's vehicle, and therefore, the facts did not support a self-defense theory. *Id.*

We find the present case is more similar to *Marshall* than it is *Kinser*. Unlike *Kinser*, here the record contains no evidence that Trujillo physically threatened Valeriano such that immediate use of force against Trujillo was necessary. While Trujillo may have encouraged Valeriano to fight him in his cell, Valeriano could have rejected the challenge. Even if we accept Valeriano's claim that he only injured Trujillo because Trujillo threatened him while in the cell, Valeriano entered Trujillo's cell of his own volition, apparently knowing Trujillo would fight him. As in *Marshall*, when Valeriano entered Trujillo's cell, he unjustifiably placed himself in harm's way. Therefore, the district court did not err in denying Valeriano's request for a jury instruction on self-defense.

*Appropriateness of Sentence.*

Last, Valeriano argues that the district court abused its discretion by imposing an excessive sentence. The court sentenced him to imprisonment for 24 to 36 months, which falls within the statutory range. See Neb. Rev. Stat. § 28-105 (Reissue 2016). In reviewing a sentence imposed within the statutory limits, we consider whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any legal principles in determining the sentence to be imposed. *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017).

When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* But the sentencing court is not limited to any mathematically applied set of factors. *State v. Dehning*, 296 Neb. 537, 894 N.W.2d 331 (2017). Instead, the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* A sentencing court is accorded very wide discretion in determining an appropriate sentence. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017).

The court considered the facts presented in the presentence investigation report (PSR). The PSR revealed Valeriano's criminal history included seven convictions in Wyoming and Nebraska for various violent and non-violent offenses. The violent crimes included two convictions for battery and two convictions for interference with a peace officer. At the time of the present assault, he was in jail pending trial on charges of terroristic threats and felon in possession of a firearm. Further, the PSR showed that Valeriano has a high risk of recidivism for violent behavior and falls within the maximum risk range for the alcohol abuse, drug abuse, and anti-social behavior categories. Given the wide discretion trial courts have regarding sentencing, we cannot say the trial court abused its discretion.

## CONCLUSION

For the above reasons, we find that there was sufficient evidence as a matter of law to sustain Valeriano's conviction. The district court did not err in refusing to give a self-defense instruction to the jury or abuse its discretion by imposing an excessive sentence.

AFFIRMED.